



Plaintiff's Name Jamaal Thomas
Inmate No. G-16732
Address CSP-Sacramento (B5-222)
P.O. Box 290066
Represa, Ca. 95671

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

JAMAAL THOMAS
(Name of Plaintiff)

vs.

DR. ANTIPOV, DR. PARKS, DR. DOWNIE, RN McGee, , Dr. John Ma, RN Kevin , Dr. MACIEL
(Names of all Defendants)

(Case Number) 2:11-CV-01138 MCE EFB P

COMPLAINT

Civil Rights Act, 42 U.S.C. § 1983

SECOND AMENDED COMPLAINT

1. Previous Lawsuits (list all other previous or pending lawsuits on back of this form):

A. Have you brought any other lawsuits while a prisoner? Yes ___ No X

B. If your answer to A is yes, how many? N/A
Describe previous or pending lawsuits in the space below.
(If more than one, use back of paper to continue outlining all lawsuits.)

1. Parties to this previous lawsuit:

Plaintiff N/A

Defendants N/A

2. Court (if Federal Court, give name of District; if State Court, give name of County)
N/A

3. Docket Number N/A

4. Assigned Judge N/A

5. Disposition (For example: Was the case dismissed? Was it appealed? Is it still pending?)
N/A

6. Filing date (approx.) N/A

7. Disposition date (approx.) N/A

II. Exhaustion of Administrative Remedies

A. Is there an inmate appeal or administrative remedy process available at your institution?

Yes X No

B. Have you filed an appeal or grievance concerning ALL of the facts contained in this complaint?

Yes X No

If your answer is no, explain why not N/A

C. Is the process completed?

Yes X If your answer is yes, briefly explain what happened at each level.
Please see attached 'complete' inmate appeal (exhibit A)

No If your answer is no, explain why not.
N/A

NOTICE: Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). If there is an inmate appeal or administrative remedy process available at your institution, you may not file an action under Section 1983, or any other federal law, until you have first completed (exhausted) the process available at your institution. You are required to complete (exhaust) the inmate appeal or administrative remedy process before filing suit, regardless of the relief offered by the process. Booth v. Churner, 532 U.S. 731, 741 (2001); McKinney v. Carey, 311 F.3d 1198, 1999 (9th Cir. 2002). **Even if you are seeking only money damages and the inmate appeal or administrative remedy process does not provide money, you must exhaust the process before filing suit.** Booth, 532 U.S. at 734.

III. Defendants

(In Item A below, place the full name of the defendant in the first blank, his/her official position in the second blank, and his/her place of employment in the third blank. Use item B for the names, positions and places of employment of any additional defendants.)

A. Defendant Dr. Antipov is employed as Oral surgeon/ Dentist at CSP-Sacramento, Repersa, Ca. 95671

B. Additional defendants Dr. Parks, Supervisor over dental, CSP-Sac.; Dr. Downie, Dentist, CSP-Sac.; RN McGee --- ..., Register Nurse, CSP-Sac., Dr. John Ma Doctor CSP-Sac ;RN Kevin Registered Nurse CSP-Sac. Dr. Maciel Dentist, CSP-SAC.

IV. Statement of Claim

(State here as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach extra sheets if necessary.)

Please see attached sheet.

V. Relief.

(State briefly exactly what you want the court to do for you. Make no legal arguments. Cite no cases or statutes.)

Please see attached sheet.

I declare under penalty of perjury that the foregoing is true and correct.

Date April 23, 2012 Signature of Plaintiff [signature]

(revised 6/01/04)

ATTACHED SHEET

Section IV. continues:

1. On 8/3/2011, I went to A-facilty medical to have four (4) wisdowm teeth removed by defendant Dr. Antipov.

2. While I was being preped for my surgery I made Dr. Antipov aware that I was told by doctors since my youth to always make my phyisician know that I needed to be pre-medicated before any and every dental procedure, 30 mintues with antibiotics, due to my heart murmur.

3. I was told that the dental staff, nor did defendant Dr. Antipov had my medical files on hand; yet, I was ressure that the appropriate measures were taken, and that I would be okay. The only concern of the dental staff seemed to be getting every inmate in & out of the office as fast as possible. During the surgery defendant Dr. Antipov showed no concern for my well being, when he left the mouth hinges in my mouth during the whole procedure, which took over two (2) hours. He had problems removing my left & right lower wisdom teeth, and I noticed he became frustrated to point that he applied immense pressure, that my whole head was being pulled to and fro.

4. Being that my procedure took longer than expected I was rush out of the dental office without receiving any pain medication, even after, I was notified that the anesthesa would wear off around 4:30 p.m. (diner time.). I was still foggy, and had to be supported by both correctional officers back to the transporting van.

5. Later on that day, I began to experience extreme pain, major problems breathing, my heart was beating rapidly, I was experiencing chest pain, and a fever. Finally, I was told by

my cellmate (Pacheco #F-19059) that I suffered a seizure. All I could remember was that I felt extremely weak, experienced pain all over my body, could not talk, and was very fatigue.

6. My cellmate made the floor staff aware of my precarious situation. Officers Terry & Brichetti responded to the 'man down' call, and I was taken to B-facility medical. All of this occurred after 6:00 p.m. pill call, and I was still not given any medication for my pain.

7. When arrived at B-facility medical Defendant RN McGEE 1 contacted the doctor on call, was openly disrespectful, insisting that I was on some illegal drugs, was excessively abusive in her dealing with me, being that I was slow to response to her verbal commands, and did not offer any medical assistance; even though I had a temperature Of 102.5. It was the act of kindness exhibited by c/o Terry & Brichetti, whom personally attended my medical needs, keeping my temperature down until the tending physician arrived.

8. Defendant RN McGee , continuely interrogated me with erroneous questions, even after seeing that I could not talk. She jammed her fingers down my throat in search of some guazes that I possibly swollow when I had my seizure, that she could not locate; but manage to cause me great pain rubbing up against the extremely tender wounds from my surgery. These gauzes were eventually retrieved from my throat by c/o Terry & Brichetti.

9. Upon the doctors' arrival he immediately notice that I was somnolent, had a high temperature, and that I was experiencing extreme pain. Not knowing exactually what was wrong with me, yet

fearing that I was having a reaction to the anesthesa, called DDS Burns, whom was also on call that night.

10. After DDS Burns arrival he immediately noticed my serious condition, continued to bring my temperature down, until I was able to communicate with him weakly. He realized that I was not given any pain medication after receiving extensive oral surgery earlier that day, and must be suffering from an reaction to the anesthesa. He gave me liquid pain medication, and schedule me to be seen by the institutional DDS in the morning. Dr. Burns also sent me to OHU to be monitor throughout the night, and prescribed liquid vicodin for my pain, because I was given such a small dose, and it would have been wearing off soon.

11. Once I arrived at OHU I was seen by Defendant **Dr. John Ma**, whom down played my symptoms, and told me the other doctors were wrong ( that is, I was not having an reaction to the anesthesa),yet did not examine and/or treat me; and when the pain medication began to wear off, I made him aware of my pain, and he left me in the cell suffering.

12. When the pain became unbearable, I began to bang on my cell door until a MTA showed up. I told her that Dr. Burns had prescribed me liquid viocodin, she left and returned an hour later to let me know that they (OHU) did not carry liquid viocodin. And tried to give me T-3 that Defendant **Dr.John Ma** had order, even after I personally told him and her that I could not take any tylenol, aspirin, penicillin, naproxen, ibuprofen, or moltrin I was told that Def. **Dr. John Ma** said it was okay for me to take liquid tylenol in place of DDS Burns prescription for liquid viocodin.

**13.** I was left in OHU until the next day without being seen by a dentist. I was sent back to my cell from OHU around 2 p.m. that next day (8/4/2010).

14. I was not seen by a dentist until 8/10/2010, all the while I was taking medication, that I assumed was okay for me due to Defendant Dr. John Ma verifying that it was, that I actually was allergic to, and that I had made , not only Defendant Dr. John Ma aware of, but also the tending M.T.A.

15. On 8/10/2010, I was called into the dental office, not for the severe pain and suffering that I was enduring; in addition to the allergic reaction that I was having from the medication Dr. Ma prescribed (i.e. chest and heart pain, rashes, swollen face (mouth and throat), hives, diarrhea, bloody stool, continuous vomiting, migraines, ear aches, fatigue, difficulty breathing, dehydration, etc.). This appointment was for a scheduled cleaning of the teeth. At the sight of my swollen face defendant Dr. Downie had my medical file archive to see what I was allergic to, & discontinued Def. Dr. Ma's prescription. Defendant Dr. Downie then told me that he would prescribe some pain medication that I could take, and would call me back in a week, when presumably my facial swelling had gone down.

16. At pill call that same night, I was given a bag of Tylenol prescribed by defendant Dr. Maciel, even after Dr. Downie had my medical file retrieved, and I personally made Dr. Downie aware of my allergic reaction to this medication. I gave the bag of medication back to the Medical Technician and informed her of my condition. Both Dr. Downie and Dr. Maciel went through my medical file on August 10, 2010, which showed that I am allergic to Tylenol.

17. From 8/10/2010, I continued to suffer extreme pain, coupled with the allergic reaction (s) that I was undergoing without treatment and /or medication. Every night the LVN would continue to attempt to

give me the bag of Tylenol prescribed by Dr. Maciel, and every night I would inform her that I was allergic to that and several other medications, therefore I would not be able to take the medication (Tylenol). I was forced to either take the medication that I was allergic to, to help with my pain, or just suffer through it all, in hopes of getting better. Because other then Tylenol, no other medication and or treatment was made available to me.

18. During this week my cellmate (Pacheco) wrote many medical slips on my behalf complaining of the lack of medical treatment that I was receiving and the symptoms that I was suffering. He complained verbally to every M.T.A that tried to pass me the bag of Tylenol every night, being that my face, mouth and throat were swollen to the point that I could neither talk, nor eat any solid foods.

19. On 8/17/2010, I was called in for a night Registered Nurse Line (RN Line) whom upon seeing my condition became extremely concerned for my health, heard me when I told her that I was allergic to certain medications, verified it and placed a bold notation within my medical file that I should not be given these medications. Also being concerned about my safety, did not want to give me any more medications, and scheduled me to be seen by the Dentist in the morning.

20. I was not seen by any dentist until 8/20/2010, when Defendant Dr. Downie called me back in, and was finally convinced that I was allergic to these medications, that I personally told him I was, after seeing my debilitating condition, weight loss, due to me not being able to eat any solid foods, and the immense pain I was in. Defendant Dr. Downie was at a lost for what he could do for me, and state, "let's try this and see what happens." He then prescribed Salsalate for my pain, and nothing for my swollen face (allergic reaction). I made him aware that I had not eaten anything since my surgery, and could I be placed on a liquid diet until at least the

swelling goes down, and I am able to eat. He told me that's not his department, it was medical. Medical informed me that it was the DDS responsibility to place me on a liquid diet; being the request was stemming from his office. All be said, I was not given a liquid diet, and did not eat any solid foods for this entire ordeal and loss a considerable amount of weight.

21. Being in so much pain, I eventually took the medication that Dr. Downie prescribed for me (Salsalate) trusting that he made sure that it did not contain any of the medications that I was allergic to. After taking this medication I immediately noticed that I was having an allergic reaction to it, asked the M.T.A what it consisted of, and was informed that it contained "Aspirin" (one of the medications that I made the defendant Dr. Downie know that I was allergic to). I then proceeded to inform the MTA again of the list of medications that I was allergic to (i.e. Tylenol, Aspirin, Penicillin, Naproxen, Ibuprofen, Motrin, etc.), that I could not take the Salsalate because I was allergic to it, and that I needed something t help me with the pain.

22. On 8/24/2010, without receiving any pain medication, and still suffering from the allergic reactions to all the wrong medications that I had been given throughout this ordeal; it all became too much and I passed out. I was later informed by my cellmate that he became concerned about my condition, and called "Man Down". When I came to all I remember is that Correctional Officer Brichetti escorted me down to the B Facility medical, where the Registered Nurse called Defendant Dr. Parks who prescribed me Morphine for the night and scheduled me to be seen by the dentist in the morning.

23. Plaintiff was made aware after this ordeal, while being interviewed by defendant Dr. Parks, the supervising physician; whom after being made aware of my allergic reaction to certain medications,

prescribed Tylenol (T-3) to me. Plaintiff was not aware that "T in T-3 stood for Tylenol until he had an allergic reaction to it.

24. On 8/25/10, I was taken to an out side medical appointment at (San Jaunquin Hospital) concerning my heart murmur, and did not make the dental appointment. Once I arrived at the hospital, I was seen by Dr. Sarah Lee, whom upon seeing my condition notified me and the transporting officers that she couldn't do anything for me in this state. She was unaware what was done to me to bring me to this state, and did not want to even examine me until my current ordeal was brought under control.

25. Upon my arrival back at CSP-Sac. I was taken to A-Facility to be checked back into the institution. Where I made Defendant Registered Nurse Kevin aware of the situation that had just occurred at the outside hospital, that I was suffering severe pain and allergic reactions as a result of the medications, what my symptoms were, and that I really needed medical treatment for my pain and suffering, which was obvious from my severely swollen face. Defendant Registered Nurse Kevin showed no concern for my health, my condition, nor the extreme pain that I was suffering; and simply cleared me to go back to my facility without any treatment.

26. Upon being transported back to b Facility by Correctional Officer Cea, I refused to go back to my cell until I received some kind of treatment for my pain. After arguing with medical staff for 15 minutes, they grew tired of my refusal (s) and called the A Facility rover the defendant (Registered Nurse Kevin), whom I had just left.

27. Upset with the fact that he (Defendant Registered Nurse Kevin) had to come over from A Facility to see me, he stated, "I can't do nothing for you anyway, all you are trying to do is get drugs and all I'm going to give you is Tylenol 3." I made defendant Registered Nurse Kevin aware of all the medications that I was allergic to, and he

simply stated, "Your not getting anything else, either take it or leave it." All the while joking with other medical staff that all I wanted was some drugs. It was not until Correctional Officer D. Prasinos, whom was on duty the night I was seen by the RN, verified what I was saying and how the defendant Dr. Parks prescribed morphine for me that night; he did not take my situation serious. Registered Nurse Kevin then called defendant Dr. Parks, who again prescribed me morphine to deal with the pain; yet prescribed me a weeks worth of T-3's and penicillin when he (Defendant Dr. Parks was aware of my allergic condition.

28. While on the phone with Defendant Dr. Parks, I argued with Defendant RN Kevin letting them both know that I would not take those medications because I was allergic to them that I was still suffering from the allergic reaction(s) from taking medications doctors wrongly prescribed to me (i.e. swollen face, throat, mouth, etc.) until finally after trying to coerce /strongly persuade me t take them, defendant Dr. Parks prescribed me 250 mg of Erythromycin to combat my then obvious infection.

29. Even after all of this defendant RN Kevin continued to try and coerce me to at least take a Tylenol to help with my persisting fever. I again had to make him aware that I was allergic to Tylenol, and still suffering from my allergic reaction to it.

30. On 8/26/2010, I was seen by DDS Marciel, whom upon seeing my severe condition (i.e. swollen face, throat, mouth), rashes, hives, fever, and lower mouth still being numb as a result of nerve damage; called his supervisor (defendant Dr. Parks) to prescribe me liquid methadone for my pain and continued me on erythromycin for my obvious infection, ordered me ensure drinks (liquid diet) because of my inability to eat solid foods and scheduled me to be seen by the Oral Surgeon.

31. It took well over three (3) weeks before I finally begin to receive appropriate treatment by this doctor whom had prescribed a stronger antibiotic because the infection had worsen (clyndamicin), called me in everyday to receive a oral rinse to treat the infection, and monitored my condition daily to make sure that I was getting better.

32. Due to the fact that I was left without treatment of my infection for weeks, given the wrong medications (even after being made aware of my allergic condition) having several allergic reactions to this medication, being placed through the inhumane treatment at the initial surgery (i.e. having the hinges left in my mouth for hours on end), I am still suffering from the effects of this whole ordeal. That is, besides the immense pain that I had to endure , the weight loss from lack of being able to eat, all the complications of my allergic reactions; my jaw still becomes unhinged when I chew, and hurts when I speak for any length of time. My heart condition has worsened tremendously, that can be linked directly to this ordeal, and I am still receiving antibiotics to ensure that my jaw bone has not been infected.

**First Claim Deliberate Indifference**

33. (1) The allegations contained in paragraph 1 thru 32 defendants Antipov, Dr. Parks, Dr. Downie, Registered Nurse McGee, Dr. Maciel, Dr. John Ma, Registered Nurse Kevin, at all times acted under the color of state law when they disregarded plaintiffs warning, did not refer to plaintiff's medical files, and ignored his plea for help, and medical attention. Thereby acted with deliberate indifference when they failed to treat plaintiff when it was obvious that he was suffering from some kind of ailment.

34. (2) Defendants Antipov, Dr. Parks, Dr. Downie, Registered Nurse McGee, Dr. Maciel, Dr. John Ma, Registered Nurse Kevin, at all

times acted under the color of state law when they disregarded plaintiffs warning , and medical files , continuously prescribing him medication that he was allergic to, causing him to have serious allergic reactions, and complications from these medications. While continuously failing to address plaintiffs medical needs.

35. (3) Defendants Antipov, Dr. Parks, Dr. Downie, Registered Nurse McGee, Dr. Maciel, Dr. John Ma, Registered Nurse Kevin, at all times acted under the color of state law acted with deliberate indifference when upon seeing plaintiff's swollen face did nothing by way of treatment, and consistently acted with total disregard for plaintiff's health and well-being.

36. (4) Defendant Antipov being the oral surgeon for CSP-Sacramento, is responsible for every inmate that he performs oral surgery on. There is no reasonable explanation as to why he did no consult plaintiff's medical files, and/or take heed to plaintiff's warnings that he needed to be pre-medicated before surgery, and that he was allergic to certain medications. Being only concerned with "his time" in conducting these surgery, he totally disregarded plaintiff's health and well being by leaving the mouth hinges in plaintiff's mouth well over (2) hours causing complications that plaintiff still suffers from to this date.

37. (5) Defendants Antipov, Dr. Parks, Dr. Downie, Dr. Maciel, Dr. John Ma, at all times acted under the color of state law when they failed to take action(s) that would cease all the pain and suffering that this plaintiff had to endure. Thereby allowing an infection to go untreated to the point that it may have began to infect plaintiff's jaw bone; and causing him serious heart problems. Acted with deliberate indifference to plaintiff's well being, and his medical needs.

**Second Claim Cruel and Unusual Punishment**

38. Defendants RN McGee, Dr. John Ma, and RN Kevin at all times acted under the color of state law when they continuously accused plaintiff of trying to obtain drugs, of being on drugs, and joking around about serious condition while offering no treatment; subjected him to cruel and unusual punishment, causing not only serious injuries, but psychological and emotional injuries as well.

39. Defendants Dr. Parks, Dr. Downie, Dr. Maciel, Dr. John Ma, RN McGee and RN Kevin at all times acted under the color of state law when they ignored plaintiff pleas for help, allowing him to suffer and infection, unbearable pain, and the effects of his allergic reaction to being wrongly prescribed medication that they all knew or should have known he was allergic to, for weeks on end; subjected plaintiff to cruel and unusual punishment.

40. Defendants Dr. Parks, Dr. Downie, Dr. Maciel, and Dr. John Ma, at all times acted under the color of state law when they prescribed plaintiff medication that he made them aware that he was allergic to; which now has caused him to suffer from a heart condition that doctors are still trying to determine the seriousness of, and which is being treated by outside doctors, subjected him to Cruel and Unusual punishment, resulting in physical, psychological, and emotional injuries.

**Third Claim Gross Negligence**

41. Defendants Dr. Parks, Dr. Downie, RN McGee, Dr. Maciel, Dr. John Ma, and RN Kevin committed Gross Negligence when after viewing plaintiff, and his obvious signs of illness (i.e. swollen face, rashes, hives, etc). Did nothing to treat plaintiff, who was also in serious pain, in violation of his Civil Rights, 8th and 14th Amendment Rights.

42. Dr. Parks, Dr. Downie, RN McGee, , Dr. John Ma, and RN Kevin committed Gross Negligence when plaintiff was brought to their

care after a "Man Down" signal did nothing by way of treatment and simply accused plaintiff of wanting drugs, in violation of his Civil Rights, 8th and 14th amendment Rights.

**Causation**

As a direct and proximate result of the aforementioned acts and omissions on the part of defendants, plaintiff has suffered and continues to suffer General and Specific Damages in an amount to be specified in his Relief and/or to be proven at trial. Plaintiff has no adequate or complete remedy at law to redress the wrongs described herein; plaintiff has and will continue to be irreparably injured by the conduct of defendants unless the court grants the relief which plaintiff seeks. CDCR appeal system needs major safeguard changes and regulations

"
"
"
"
"
"
"
"
"
"
"
"
"
"

Verification

I, JAMAAL THOMS, declare the following:

1. I am the plaintiff in the above action.

2. I have read the foregoing complaint and know the contents thereof.

3. The same is true of my own knowledge, except as to those matters which are therein stated on information I believe to be true.

4. I declare under penalty of perjury that the foregoing is true and correct. Executed this 23 day of April ,2012 here at CSP-Sacramento, Represa, Ca. 95671.

JAMAAL THOMAS

# EXHIBIT COVER PAGE

A

EXHIBIT

Description of this Exhibit: Inmate Appeal

Number of pages to this Exhibit: _________ pages.

JURISDICTION: (Check only one)

- [ ] Municipal Court
- [ ] Superior Court
- [ ] Applellate Court
- [ ] State Supreme Court
- [ ] United States District Court
- [ ] State Circuit Court
- [ ] United States Supreme Court
- [ ] Grand Jury

STATE OF CALIFORNIA
**INMATE/PAROLEE HEALTH CARE APPEAL FORM**
CDCR 602-HC (08/08)

DEPARTMENT OF CORRECTIONS AND REHABILITATION
CALIFORNIA PRISON HEALTH CARE SERVICES

**Side 1**

Location: Institution/Parole Region: 1. SAC-TC 2. ______
Log #: 1. IC 12316 2. ______
Category: 8

You may appeal any policy, action or decision which has a significant adverse affect upon you. This form shall be used when the policy, action or decision being appealed involves health care services (medical, dental, or mental health). You must first informally seek relief through discussion with the appropriate staff member or by utilizing the health care service processes at your institution. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Health Care Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| THOMAS | G-16732 | ABE III | B5-222 |

**A. Describe Problem:** This appeal arise out of a problem that I am having getting an inmate appeal that I filed with the medical Appeals Coordinator on or about, 9/12/2010, logged and/or even acknowledge that the appeal have been recieved. (See Exhibit A-Request for Review.) This appeal stems from severe complications I had after oral surgery. On or upon 9/3/2010, I had all four of my wisdom teeth pulled. Prior to this minor surgery, as I had been told to do by my previous Doctors; I made this surgeon aware of my heart murmur, and how I was told that I would need to take antibiotics before any dental work was done. The surgeon listened, told me

If you need more space, attach one additional sheet. Attached sheet ...

**B. Action Requested:** To have this matter thoroughly investigated and medical staff reprimended. And to recieve monetary damages for my pain and suffering.

Inmate/Parolee Signature: [signature] Date Submitted: 9-28-10

**C. INFORMAL LEVEL (Date Received ______):**

Staff Response:

BYPASS

Staff Signature: ______ Date Returned to Inmate: ______

**D. FORMAL LEVEL:**

If you are dissatisfied, explain below, attach supporting documents (Health Care Service Request Form, CDC 7362, Comprehensive Accommodation Chrono, CDC 7410, Trust Account Statement, etc.) and submit for processing to the Health Care Appeals Coordinator at your location within 15 days of receipt of response.

BYPASS

Inmate/Parolee Signature: ______ Date Submitted: ______

RECEIVED OCT 1 HC APPEALS

**CDCR Appeal Number**

THOMAS # G-16732

Healthcare Appeal Form B5-222

Attached Sheet...

that everything was taken care of, and proceeded to extract my teeth. I was immediately rushed out of the dental office after surgery, and did not have my prescription filled. Later on that night, I began to experience pain well beyond what I expected from having my teeth pulled, I had major problems breathing, my heart was beating rapidly, I had chest pains, and a fever. Finally I was told by my cellmate Pacheco # F-19059 that I had suffered a Seizure. All I remember is that I was extremely weak, expereincing pain all over, and I could not talk feeling very fatigue. Becoming concerned about my worsening condition, my cell mate made floor staff C/o's Terry and Borchitti) aware of my condition, that I was going in and out of consciousness, etc. I was finally taken to medical, where the outside Doctor and Dentist was called. While I was waiting for the Doctor to show up, C/o Terry and Bricchetti personally tended to my medical needs, (that is giving me water and placing ice on me to try an bring down my fever) When the DR. arrived he immediately noticed that I was very somnolent, had a fever (Temp. of 102.5) and was experencing severe pain. Not knowing exactually what was wrong with me, and assuming that I was suffering from an reaction from the anesthetic, he called the Dentist, whom informed him that he would come in an examine me himself. After seeing me the Dentist, noticed my serious condition, scheduled me to be seen by the institutional DDS. the next day, gave me some pain medication, and prescribe liquid viocidin, before sending me to OHU for the night. Once I

(1.) arrived at OHU I was seen by the Physician there, who down played my symptoms, and told me the other DR.'s were wrong in dianosing me as having an reaction to the anesthesia. He did nothing by way of treatment to the symptoms I was exhibiting, and just left me in a cell. I was experincing so much pain by this time, that I had to bang on the cell door to get medical staff attention, to let them know that the DDS. prescribed ~~for~~ liquid viocodin ~~me.~~ for me. I was informed they didn't carry liquid viocodin and was given T-3 instead. At

that time I made medical staff aware of me being allergic to Tylenol, penicillin, Asprin

Pg 3

Health care Appeal Form

THOMAS # G-16732

B5-222

Attached Sheet...

my condition and didn't want to do too much to worsen my condition and scheduled me to come back) when I returned to C.S.P, I refused to go to my cell without recieving some medical treatment. After arguing with medical staff persisting that I be treated, that the Nurse call the DR. who tried to give me Tylenol again, and once again, after custody staff informed them along with myself, that I was allergic. Then, the DR. gave the nurse instructions to give me Morphine, as the DR. from the previous night. I was seen by the DDS. the next day, still not knowing why my face had not begin to go down, or what was wrong, he prescribed liquid metho-dome for my pain and because at this time I was still having a hard time swallowing, and scheduled me to be seen by the OEal surgeon, diagnosed and begin recieving proper treatment. Over this whole ordeal it took among 30 days for me to recieve proper treatment, I could not eat, lost 15lbs, suffered indiscrible pain, was humiliated repeatedly by medical staff (i.e. the initial night, the tending M.T.A repeatedly pushed on me to get my attention, and stuck her finger in my mouth (that I just had surgery on) roughly checking for gauzes she didn't find. C/O Terry eventually found and removed.) who shown deliberate indifference to my health, my dignity, and well being.

Attached Sheet

Section H continues:

as a result. It deserve mentioning here that C. Park, DDS, whom interviewed me was one of the doctors involved in treating me, and prescribed me medication that I consistently told any one who would listen that I would allergic to. Fourth, through this whole ordeal I was never given the simple test to confirm my allergies to these medications (still have not), nor was I listen to by medical staff. whom took the position that if it was not in my file it did not count and/or matter.

I was forced/made to suffer unbearable pain over a course of a couple of months, and to this date, I still have not been a reasonable explanation why. I feel this matter is being overlooked to the detriment of myself, and other inmates, because the medical system here at CSP-Sacramento failed me totally. In clear violation of my 8th Amendment Right.

STATE OF CALIFORNIA
GA-22 (9/92)

# INMATE REQUEST FOR INTERVIEW

DEPARTMENT OF CORRECTIONS

| DATE | TO | FROM (LAST NAME) | CDC NUMBER |
|---|---|---|---|
| 9/14/2010 | Appeals Coordinator (Medical) | Thomas | G-16732 |

| HOUSING | BED NUMBER | WORK ASSIGNMENT | JOB NUMBER |
|---|---|---|---|
| B5 | 222 | SOU | FROM 7:00 TO 2:00 |

| OTHER ASSIGNMENT (SCHOOL, THERAPY, ETC.) | ASSIGNMENT HOURS |
|---|---|
| N/A | FROM 7:00 TO 2:00 |

**Clearly state your reason for requesting this interview.**
You will be called in for interview in the near future if the matter cannot be handled by correspondence.

I am concerned about not hearing from you on a medical appeal that I filed on or about August 31, 2010; in which, I was suffering great pain due to medical errors stemming from oral surgery. It has been over two (2) weeks and I still haven't recieved a log number or any medication that it have been recieved. Your reply in this matter

Do NOT write below this line. If more space is required, write on back.

INTERVIEWED BY | DATE

DISPOSITION

Exhibit A

State of California

ATTACHMENT E-3

# Memorandum

Date : November 3, 2010

To : THOMAS # G-16732
B-5-222 CSP-SACRAMENTO

Subject: **STAFF COMPLAINT RESPONSE - APPEAL # SAC-10-10-12316**

APPEAL ISSUE: You contend that you had severe complications after all four of your wisdom teeth were pulled on or around August 3, 2010. Before the procedure you made the dentist aware that you had a heart murmur, and doctors had told you that you needed antibiotics before any dental work was done. The surgeon told you that everything was taken care of and extracted your teeth. You were rushed out of the dental clinic without your prescription. Later that night, you experienced extreme pain, a rapid heart beat, fever, had trouble breathing, and your cellmate said that you had had a seizure. You were taken to the medical clinic; you had a temperature of 102.5 and the doctor noticed that you were very somnolent and in extreme pain. The doctor did not know what was wrong and assumed that you were suffering from an allergic reaction to anesthesia. The dentist saw you, scheduled you to see the doctor the next day, prescribed liquid Vicodin, and sent you to OHU. The doctor in OHU downplayed your symptoms and told you that the other doctors were wrong in their diagnoses. You were informed that liquid Vicodin was not available, and you were given Tylenol-3. You told medical staff that you were allergic to Tylenol, penicillin, aspirin, ibuprofen, and naproxen, and you were told that it was alright for you to take Tylenol. You did not see the dentist until the following week, during which time you were taking medication containing Tylenol and penicillin. You were still suffering severe pain, high fever, chest and heart pain, rashes, swollen mouth, hives, diarrhea, constipation, bloody stool, continuous vomiting, migraines, earaches, fatigue, breathing difficulty, and fainting. The dentist said that he would discontinue the Tylenol and penicillin and call you back in one week, but at medication pass that night, you were given Tylenol. You explained that you were allergic, but were told that that was what the dentist ordered. You saw an RN on August 17th who was extremely concerned about your condition and scheduled you to see the dentist. On August 20th, you saw the dentist who finally realized that you were truly allergic to the prescribed medications; he prescribed salsalate, which contains aspirin, and you experienced a severe reaction. You stopped taking this medication, and on August 24th, you could not bear the pain any longer, and passed out. You were taken to the clinic where you were prescribed morphine and scheduled to see the dentist the next day. However, the next day you were sent to an outside hospital concerning your heart murmur, but could not be treated because of your oral problems. Upon your return, you refused to go to your cell without receiving medical treatment; you received morphine. The next day the dentist prescribed liquid methadone and referred you to the oral surgeon. It took almost thirty days to receive proper treatment; you lost fifteen pounds, and suffered indescribable pain. You further contend that you submitted an appeal regarding this matter which was not processed.

**DETERMINATION OF ISSUE:** A review of the allegations of staff misconduct presented in the written complaint has been completed. Based upon this review your appeal has been handled as follows:

☒ PROCESSED AS A STAFF COMPLAINT APPEAL INQUIRY
☐ REFERRED TO THE OFFICE OF INTERNAL AFFAIRS (OIA).

**SUMMARY FOR APPEAL INQUIRY:**

You were interviewed on October 27, 2010 by C. Park, DDS and you stated during the interview, you stated that one of the key issues is that fact that you are allergic or sensitive to Penicillin and Tylenol and don't want to be prescribed these in the future. A review of your Unit Health Record does not include any laboratory tests that have been done to confirm your allergies/sensitivity to these medications. However, the goal will be to ensure that Penicillin and Tylenol will not be prescribed for you in the future. During the interview, you did not state that there was any one particular staff that you felt had mistreated you.

**CHOOSE ONE:**

☒ A Confidential Inquiry was conducted. There were no witnesses. The following information was reviewed as a result of your allegations of staff misconduct: Unit Health Record.

☐ This matter has been referred to the Office of Internal Affairs for follow-up and a possible investigation. If investigated, upon completion of that investigation you will be notified as to whether the allegations were SUSTAINED, NOT SUSTAINED, UNFOUNDED, EXONERATED or that NO FINDING was possible.. In the event that the matter is not investigated, but returned by OIA to the institution or region to conduct a Confidential Inquiry, you will be notified upon the completion of that inquiry as to whether it was determined that staff violated, or did not violate policy.

**FINDINGS FOR AN APPEAL INQUIRY:**

Your appeal is PARTIALLY GRANTED at the ☐ First level ☒Second level:

☒ An inquiry into your allegation has been conducted.

☐ An investigation is being conducted by the Office of Internal Affairs

ALL STAFF PERSONNEL MATTERS ARE CONFIDENTIAL IN NATURE. As such, the details of any inquiry will not be shared with staff, members of the public, or inmates. Although you have the right to submit a staff complaint, a request for administrative action regarding staff or the placement of documentation in a staff member's personnel file is beyond the scope of the staff complaint process. However, you have the right to be notified if after a review of your allegations, it is determined that staff violated CDCR policy. In this case:

☐ The inquiry is not yet complete

☒ The inquiry is complete. Staff did not violate CDCR policy.

Allegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process. If you wish to appeal the decision, you must submit your staff complaint appeal through all levels of appeal review up to, and including, the Director's Level of Review. Once a decision has been rendered at the Director's Level of Review, your administrative remedies will be considered exhausted.

Please print and sign below:

Andrew W Deems

A. Deems, Chief Executive Officer

STATE OF CALIFORNIA
PRISON HEALTH CARE SERVICES

J. Clark Kelso, Receiver



Date: February 3, 2011

To: Jamaal Thomas, G16732
California State Prison, Sacramento
P.O. Box 29
Represa. CA 95671-0002

From: California Prison Health Care Services
Office of Third Level Appeals – Health Care
P.O. Box 4038
Sacramento, CA 95812-4038

OTLA Case No.: SAC SC 10000006 Institution Log No.: SAC-10-10-12316

This appeal was reviewed on behalf of the Director, California Department of Corrections and Rehabilitation (CDCR), by licensed clinical staff under the supervision of the Health Program Manager III. All submitted information has been considered.

I. **DIRECTOR'S LEVEL DECISION:** Appeal is partially granted.

II. **ISSUE:**

Your CDCR 602-HC indicated you alleged you had severe complications after having four of your wisdom teeth pulled on or around August 3, 2010. You alleged you were told that you needed prophylactic antibiotics prior to the procedure due to your heart murmur. You alleged following the surgery, your prescription was not filled and you experienced pain beyond what you expected. You alleged that you had post operative complications including an elevated temperature, chest pains, breathing problems, and a seizure. You alleged your cellmate apprised Correctional Officer (CO) Terry and CO Brichetti of your condition and were subsequently taken to medical where a physician and dentist evaluated and treated you. You alleged it was determined that you were having a reaction to the anesthetic and you were prescribed liquid Vicodin and sent to spend the night in the Outpatient Housing Unit (OHU).

You alleged the OHU physician downplayed your symptoms and claimed the diagnosis of anesthetic reaction was incorrect. You alleged that you were given Tylenol with Codeine instead of the liquid Vicodin, despite telling the medical staff of your medication allergies which included Tylenol, Aspirin, and Penicillin. You alleged you were sent back to your cell the following day at about 2:00 P.M. without seeing the dentist as had been recommended the prior evening.

You alleged on August 10, 2010, you were called to see the dentist for your routine cleaning appointment. You alleged that It was at that time it was determined that you were having an allergic reaction to the Tylenol and Penicillin you were taking. You alleged the dentist told you he would discontinue both medications. However, at medication pass that evening and the next day, you alleged you were given a week's worth of Tylenol despite your claim to the Medical Technical Assistant (MTA) of being allergic

to the medication. Following submission of multiple medical slips (7362's) you alleged you saw the dentist on August 20, 2010, who acknowledged the allergic reaction and prescribed salsalate for your pain. You alleged you took the medication, not knowing that it contained aspirin. You alleged you had a severe reaction to it and subsequently stopped taking it.

You alleged on August 24, 2010, without any pain medication, you passed out from the pain. Responding to a man down, CO Brichetti escorted you to the medical clinic where you alleged you received Morphine Sulfate.

You alleged on August 25, 2010, you were taken to San Joaquin Hospital for evaluation of your heart murmur. However, you alleged you could not be treated for your heart due to your oral problems and you were scheduled to return at another time. Upon returning to California State Prison, Sacramento (SAC), you alleged that you refused to go to your cell without receiving medical treatment. You alleged that following discussions about your allergic reactions, you received Morphine Sulfate. You alleged, you were seen by the dentist the following day who prescribed liquid methadone and a referred to the oral surgeon for a proper diagnosis and treatment.

You alleged it took thirty days for you to receive proper treatment during which time you lost fifteen pounds, suffered indescribable pain, and was repeatedly humiliated by staff.

You requested to have the matter thoroughly investigated, medical staff reprimanded, and to receive monetary damages for pain and suffering.

## III. PRIOR APPEAL HISTORY:

A. Informal Level: The appeal was categorized as a staff complaint and elevated from the informal level to the second level of review.

B. Second Level: The Second Level Response (SLR) stated your appeal was partially granted as follows:

- The appeal was processed as a staff complaint appeal inquiry; a confidential inquiry (CI) was conducted that included your interview, and review of your Unit Health Record (UHR).
- The inquiry was completed and concluded staff did not violate CDCR policy.

## IV. BASIS FOR DIRECTOR'S LEVEL DECISION:

At the Director's Level of Review (DLR), submitted on November, 26 2010, you stated your dissatisfaction with the SLR.

It is noted you have added new issues and/or requests to your appeal at the Director's Level of Review. It is not appropriate to expand the appeal beyond the initial problem and or request(s). You have not provided evidence that you attempted to address these issues at the informal level, per the California Code of Regulations (CCR), Title 15, Section 3084.3 (c)(4).

The Department takes your complaint against any personnel seriously and all efforts are made to ensure these matters are thoroughly researched and responded to accordingly. However, it is not in the purview of the inmates to request specific action taken in regards to the conduct of the

inquiry or in regards to disciplinary action against personnel. Title 15 and the CDCR Operations Manual specify the requirements necessary to conduct a staff complaint inquiry. Any action taken by the Department is confidential. As such, no matters related to personnel shall be shared with inmates or the public. Therefore, your request to have the matter thoroughly investigated and staff reprimanded will not be addressed.

Monetary compensation is beyond the scope of the appeals process. If you are dissatisfied with this response concerning your request for monetary compensation, you may wish to contact the California Victims Compensation and Government Claims Unit, P. O. Box 3035, Sacramento, CA 94812-3035.

Your appeal was deemed a staff complaint by the institutional hiring authority. The Director's Level reviewer contacted the California State Prison, Sacramento (SAC) Health Care Appeals Coordinator and a review of the CI and documents included in the review of your staff complaint allegations was performed. You were interviewed on October 27, 2010 and your UHR documents were reviewed. The inquiry was incomplete, as it did not address all your allegations and did not support the conclusions determined. Therefore, a Modification Order is issued as stated below.

V. **RULES AND REGULATIONS:** The rules governing these issues are: California Code of Regulations, Title 15; Inmate Medical Services Program Policies and Procedures; Inmate Dental Services Program Policies and Procedures (2010), Department Operations Manual.

VI. **ORDER**: The Chief Executive Officer (CEO) at SAC shall complete the CI regarding all of Jamaal Thomas' allegations cited in SAC-10-10-12316 according to current departmental policy and procedures. Further the CEO shall provide the evidence supporting the conclusion of the Second Level Response (SLR): "staff did not violate CDCR policy". If the findings are different, then the CEO will amend the SLR and send to Jamaal Thomas.

This decision exhausts your available administrative remedy within the CDCR.

N. WARREN, Chief (Acting)
California Prison Health Care Services
Office of Third Level Appeals-Health Care

cc: Chief Executive Officer, California State Prison, Sacramento (SAC)
Health Care Appeals Coordinator, SAC

MC