JAMAAL THOMAS CDC# G-16732
C.S.P. - Sacramento
P.O. Box 290066
Represa, CA 95671

FILED
MAY 18 2015
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMAAL THOMAS, <br> Plaintiff, <br> v. <br> ANTIPOV, et al., <br> Defendants. | CASE NO. 2:11-CV-1138 MCE EFB <br> PLAINTIFF JAMAAL THOMAS' <br> NON-CONFIDENTIAL <br> SETTLEMENT STATEMENT <br><br> The Honorable Judge: Kendall <br> J. Newman  Hearing: May 20, 2015 <br> Time: 9:30 a.m. |

## INTRODUCTION

Plaintiff, Jamaal Thomas is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983.

Defendant, Antipov is currently being represented by Attorney's of record Kathleen J. Williams and Martha Macon Stringer of WILLIAMS & ASSOCIATES.

Defendant, Downie also is currently being represented by Attorney's of record Kathleen J. Williams and Martha Macon Stringer of WILLIAMS & ASSOCIATES LAW FIRM.

## Procedural Background

Plaintiff filed his original complaint initiating this lawsuit on April 28, 2011. ECF No. 1. This action is now proceeding on plaintiff's Second Amended Complaint (verified), which the court screened on June 19, 2012, and found cognizable claims againsts defendants Antipov, Park, Downie, Ma, Grinde, and Maciel. (ECF. Nos. 45, 50.)

The defendants filed a motion for summary judgment. (ECF. No. 112-2) and plaintiff filed a counter-motion for summary judgment. (ECF No. 122.)

On December 19, 2014 proposed findings and recommendations were issued, recommending that summary judgment be granted as to defendants Grinde, Ma, Maciel, McGee, and Park, but denied as to defendants Antipov and Downie, and further recommending that plaintiff's counter-motion for summary judgment be denied as to all defendants. ECF No. 126. Defendants filed objections, arguing summary judgment should be granted as to defendant Downie. ECF No. 127. The December 19, 2014 findings and recommendations were vacated, and an Order and Amended Findings And Recommendations were proposed on February 17, 2015. ECF No. 131. Plaintiff filed objections as to defendant Ma. ECF. No. 133. On April 15, 2015 MORRISON C. ENGLAND, JR. CHIEF JUDGE modified, and confirmed the order entered on March 20, 2015 (ECF Nos. 132, 136).

## STATEMENT OF FACTS

Plaintiff asserts, that defendants Antipov, Downie, Grinde, Ma, Maciel, McGee, and Park were deliberately indifferent to his serious medical needs before, during and after the extraction of his

wisdom teeth. Antipov is an Oral Surgeon who performed the extractions while working for the California State Prison, Sacramento as an independent contractor, Downie, Park, and Macrel are dentists, Ma is a physician, McGee and Grinde are registered nurses. Defendant Antipov removed plaintiff's four wisdom teeth on August 3, 2010. Plaintiff informed Antipov prior to the extractions that he needed to be pre-medicated with antibiotics before every dental procedure because of his heart murmur, Antipov nor dental staff had plaintiff's medical file on hand. Before the extraction plaintiff was given a Dental Health Record form to complete that asked to list all medication allergies. Plaintiff depended on the nurse to write Aspirin and Naproxen as listed allergies after the nurse assisted plaintiff in spelling Tylenol and Penicillin and personally writting Motrin herself.

    Antipov did not pre-medicate plaintiff before the extraction regarding his heart murmur, however Antipov did inject plaintiff with local anesthesia before the extraction. Moments later plaintiff made Antipov aware that his heart began to beat rapidly and he was experiencing cold chills. Antipov showed no concern for plaintiff's well-being, leaving the "bite blocks" in plaintiff's mouth for the entire two-hour procedure, that was protracted and problematic from the start. Antipov struggled to remove plaintiff's left and lower right wisdom teeth and he became "frustrated to the point that he applied immense pressure, that plaintiff's whole head was being pulled to and fro" all the while ignoring plaintiff's complaints of pain. Antipov failed to prescribe plaintiff necessary antibiotics and pain medication, and because the procedure took longer than expected plaintiff was rushed out the dental office without

1  recieving any pain medication. Antipov later stated to plaintiff
2  that the surgery was difficult.
3        Later on the day of the extractions, plaintiff experienced
4  extreme pain, difficulty breathing, a rapid heart beat, chest pain, and a fever.
5  Correctional officers took plaintiff to the prison medical facility after he
6  suffered a seizure. There, he spoke with defendant McGee, a nurse, who
7  filled out and signed a form indicating that plaintiff's pain level was
8  ten out of ten. McGee contacted the on-call doctor, while being openly
9  disrespectful towards plaintiff. McGee took plaintiff's temperature that read
10 102.5 degrees but McGee did not offer any medical assistance. McGee did
11 jam her fingers down plaintiff's throat in search of gauzes that plaintiff
12 may have swallowed during his seizure. Though McGee could not locate
13 any gauzes, two correctional officers were able to. McGee's actions caused
14 plaintiff great pain. Defendant Ma was the on-call doctor who arrived
15 observed plaintiff's state and contacted Burns, a dentist. Upon learning that
16 plaintiff had not recieved any pain medication after the extraction, Burns provided
17 liquid pain medication, prescribed liquid Vicodin, scheduled plaintiff for an
18 appointment with a prison dentist the following morning, and sent plaintiff to the
19 Outpatient Housing Unit ("OHU") to be monitored throughout the night. At OHU
20 , plaintiff met with defendant Ma, in whom did not exam nor treat plaintiff
21 yet left him in the cell to suffer. When the pain became unbearable, plaintiff
22 banged on his door and requested the liquid Vicodin that Burns had ordered.
23 [Plaintiff had never taken Vicodin prior to August 3, 2010 and was led
24 to believe by Burns that, thats the medication he was given in liquid
25 form.] An hour later, a nurse informed plaintiff that OHU did not carry
26 liquid Vicodin, and tried to give plaintiff the Tylenol#3 that Ma
27 had ordered. Plaintiff told both Ma and the nurse that he could not
28 take Tylenol, Aspirin, Penicillin, Naproxen, Ibuprofen, or Motrin. Plaintiff,

pg 4

1  without having seen a dentist in OHU, was sent back to his cell at
2  approximately 2:00 p.m. the following day. Plaintiff was not seen by a
3  dentist until August 10, 2010. Throughout the preceding week plaintiff was
4  taking medication that he assumed he was not allergic to, since he informed
5  Ma of his medication allergies. The Tylenol #3 and Penicillin were "crushed
6  down into water" and plaintiff "did not know that Liquid T-3 stood for
7  Tylenol #3. From the night of August 3, up to August 10 plaintiff was
8  having an allergic reaction to the medication, experiencing chest and heart
9  pain, rashes, a swollen face, hives, diarrhea, bloody stool, continuous
10 vomiting, migraines, ear aches, fatigue, difficulty breathing, and
11 dehydration. The dentist appointment on August 10 was not for these issues
12 or even a follow-up for his surgery, but rather a scheduled tooth cleaning.
13 Defendant Downie, a dentist, retrieved plaintiff's medical file upon
14 observing plaintiff's swollen face. Plaintiff informed Downie of the "severe
15 pain [he] was in, how [he] was unable to chew nor swallow any food since
16 before the oral surgery, all his allergic symptoms, and the stomach pain [he]
17 had due to this." Defendant Maciel, a dentist, also observed plaintiff during
18 this dental visit. Downie told plaintiff he would discontinue Ma's prescription
19 and would prescribe pain medication that plaintiff could tolerate, as well as
20 have plaintiff return in a week.
21      Later on the night of August 10, plaintiff recieved a bag of
22 Tylenol that defendant Maciel had prescribed, the medication was labeled
23 acetaminophen, plaintiff took this medication for a couple of days not
24 knowing it was Tylenol. Plaintiff was later informed by the medical
25 technician that acetaminophen, this is while plaintiff was informing
26 the medical technician of his "condition". Maciel never checked plaintiff's
27 dental health history records to see what plaintiff was allergic to.
28      Plaintiff continued to suffer extreme pain after August 10. Every

1  night, prison staff would provide plaintiff with the same bag of
2  Acetaminophen (Tylenol) ordered by Maciel, and plaintiff would inform them
3  that he was allergic to that medication. Because plaintiff did not recieve any
4  other medication, he was " forced to either take the medication that [he] was
5  allergic to ... or just suffer through it all, in hopes of getting better..."
6      On August 17, 2010, a nurse became very concerned with plaintiff's
7  health. Upon learning of plaintiff's allergic reactions to the medication he was
8  given, the nurse made a bold notation in plaintiff's medical file. The nurse
9  also scheduled plaintiff for an appointment with the dentist the following
10 morning.
11     Plaintiff was not seen by a dentist until August 20, 2010. Upon seeing
12 plaintiff's condition and weight loss on that date, Downie prescribed Salsalate
13 for plaintiff's pain, but nothing for his infection, nor allergic symptoms, or
14 swollen face. Downie did not examine plaintiff's mouth because it was too
15 painful for plaintiff to open his mouth. After informing Downie that he had not
16 eaten anything since the extraction, plaintiff requested that Downie place him
17 on a liquid diet. Downie replied that it was not his department, but rather
18 medical, that determines diet. Medical, however, told plaintiff that the
19 dental department is responsible for that determination. Plaintiff was not
20 placed on a liquid diet. Because of the pain, plaintiff eventually took
21 the Salsalate that Downie prescribed. Plaintiff also had an allergic
22 reaction to that medication. Upon learning that Salsalate has Aspirin in it,
23 plaintiff requested another medication.
24     Plaintiff, " without recieving any pain medication", and unable to
25 bear the pain passed out on August 24. He was taken to the medical
26 facility, where the nurse called defendant Park a doctor. Park prescribed
27 Morphine for the night and scheduled a dentist appointment for
28 plaintiff. Park did not prescribe antibiotics.

1. On August 25, plaintiff had an appointment at San Joaquin General
2. Hospital concerning his heart. Because of that appointment, plaintiff was not
3. able to attend the dental appointment that Park ordered. Upon returning to
4. the prison's A-facility to be checked back into the institution, defendant
5. Grinde, a nurse ignored the fact that plaintiff was in extreme pain, had
6. a swollen face on his right jaw side, and was still suffering the same allergic
7. reactions. Grinde approved plaintiff's return to B-facility without any
8. treatment, plaintiff expressed to Grinde the severity of his pain while at A-facility.
9.     At B-facility, plaintiff refused to go back into his cell until he
10. recieved treatment for his pain. After plaintiff argued with medical staff for
11. fifteen minutes, Grinde reported to B-facility. Grinde stated that he
12. could not do anything for plaintiff because plaintiff was just trying to get
13. drugs. Grinde provided plaintiff with Tylenol #3, plaintiff informed Grinde that
14. he was allergic to that and other medications. Grinde called Park, who again
15. prescribed Morphine for the pain. But Park also prescribed Tylenol #3 and
16. Penicillin, despite knowing of plaintiff's allergies to those medications. After
17. plaintiff argued with both Grinde and Park, Park also prescribed
18. Erythromycin for plaintiff's obvious infection.
19.     On August 26, plaintiff met with Maciel. Maciel prescribed
20. plaintiff liquid Methadone, continued the Erythromycin treatment, ordered
21. a liquid diet, and scheduled plaintiff for an appointment with the oral
22. surgeon. (Plaintiff later found out that the liquid diet was provided by a
23. medical technician in whom had knowledge of the fact that plaintiff had not
24. eaten since the extractions). Maciel then prescribed a stronger antibiotic
25. "clindamycin" and called plaintiff in everyday to recieve an oral rinse to
26. treat the infection.
27.     Plaintiff is still " suffering from the effects of this
28. whole ordeal," as his jaw unhinges when he chews and hurts when

1  he speaks for certain lengths of time. Specifically, plaintiff claims
2  that Antipov's extraction caused "TMJ, a dislocated disk in
3  [plaintiff's] jaw and a deviation" in plaintiff's jaw. Additionally, his
4  heart condition worsened tremendously as a direct result of the
5  extraction and the medical care he recieved afterwards, and he lost
6  weight as a result of not being able to eat from August 3 until the
7  first week of September.

## LEGAL ISSUES

**A.**
Defendants were deliberately indifferent to plaintiff's serious medical needs before, during, and after the extraction of his wisdom teeth (all 4 wisdom teeth) and subject plaintiff to cruel and unusual punishment by subjecting plaintiff to unecessary and wanton infliction of pain, by ignoring plaintiff's complaints of severe and extreme pain. Pain that was caused by the direct results of the defendants actions. Plaintiff's Eigth Amendment was further violated when plaintiff was deprived of adequate food, a basic human need and life sustaining substance for 3 weeks.

**B.** Plaintiff's right to adequate medical treatment was violated when defendants denied and deliberately disregarded prescribing plaintiff pain medication and antibiotics after extracting four (4) wisdom teeth from his mouth. Defendants knew plaintiff was at risk for an infection at the extraction sites and was experiencing severe pain during and directly after the extractions. Defendants also knew the risk, an infection, would cause damage to plaintiff's heart, and chose to disregard these obvious risks.

|   |   |
|---|---|
| 1 | OFFERS |
| 2 |   |
| 3 | No offers have been made by either party in this action. |

## SETTLEMENT EFFORTS

On December 19, 2013 the court directed the parties to this action to submit Confidential Statements to the Alternative Dispute Resolution (ADR) (ECF. No. 103).

On January 1, 2014 plaintiff submitted his Confidential Statement to Sujean Park ADR Prisoner Settlement Coordinator at U.S. District Court Suite #4-200  501 I street Sacramento, CA 95814.

## REQUEST FOR RELIEF

A. Compensatory Damages

Plaintiff has suffered past and will continue to suffer future emotional, psychological, and physical injury due to the deliberate actions of all defendants, which has caused irreparable damages to plaintiff's emotional, psychological, and physical health.

Defendants actions has caused irreparable damage to plaintiff's jaw, damage that effects plaintiff's daily activities (enjoyment of life) by limiting plaintiff's ability to talk, plaintiff's ability to eat food on the right side of his mouth, plaintiff's ability

1  to open his mouth wide, has been altered and his jaw deviates
2  and causes severe pain whenever plaintiff attempts to do so. Plaintiff
3  has damage to his jaw that will remain with him for the rest
4  of his life, this damage will require medical expenses for the
5  remainder of plaintiff's life. Therefore plaintiff is requesting
6  compensatory damages including; economic harm, pain and
7  suffering past and future, mental and emotional distress past
8  and future, that results from plaintiff's rights being violated
9  by defendants.

12  B. Punitive Damages.

14      Plaintiff plans to seek punitive damages if the case
15  proceeds to trial. Antipov's actions were reprehensible and
16  reckless to the point plaintiff suffered physical injury to his
17  jaw and lost unhealthy amounts of weight. Antipov displayed a
18  callous indifference to plaintiff's rights when he denied plaintiff
19  medication to alleviate plaintiff's obvious pain and antibiotics
20  when Antipov knew plaintiff was at high risk for infection after
21  having four wisdom teeth extracted, in which plaintiff later
22  suffered an infection at the extraction sights (specifically extraction
23  sight #32 lower right) that was delayed in being treated. Downie
24  repeatedly denied plaintiff's requests to be placed on a liquid
25  diet even after Downie witnessed plaintiff's obvious weight loss,
26  was made aware of plaintiff's inability to eat since the August
27  3rd, teeth extraction, and the severe pain it caused plaintiff's
28  stomach, demonstrates reckless indifference to the Constitutional

1. Rights of plaintiff. Their conduct will merit an award of
2. punitive damages.

### CURRENT SETTLEMENT POSITION

A. Damages;

Plaintiff request for compensatory damages is $100,000, including but not limited to, $65,000 for past and present pain and suffering, $10,000 for future pain and suffering, $15,000 for past mental anguish, and $10,000 for past lost of enjoyment of life. In the event this case proceeds to trial, plaintiff will seek, and prove his entitlement to additional catergories of damages discussed above, including punitive damages.

B. Injuction Relief;

Plaintiff would like Defendants to agree to an injunction (1) to be provided adequate medical and dental care (2) prohibit retaliation against plaintiff by CDCR personnel for his efforts to seek medical treatment (past, present, and future) and any related legal activities.

Dated: May 11, 2015

Respectfully submitted

Jamaal Thomas
Plaintiff, In Pro Se.

# PROOF OF SERVICE
## (C.C.P §2015.5, 28 U.S.C. 1745)

I, __THOMAS__, am over the age of eighteen (18) years of age, and I (am) (am not) a party to the within cause of action. My address is:

```
        CSP-SAC
        P.O. Box 290066
        Represa, CA
        95671
```

On, __MAY__ __18__, __2015__, I served the following documents:

1. __PLAINTIFFS NON-CONFIDENTIAL SETTLEMENT__
2. __STATEMENT__
3. ___
4. ___
5. ___

on the below named individuals by depositing true and correct copies thereof in the United States mail in Represa, California, with postage prepaid thereon, addressed as follows:

1. Magistrate Judge
   Kendall J. Newman
   USDC District Court Rm#25
   501 I street Rm #25
   Sacramento, CA,
   95814

2. KATHLEEN S. Williams 127021
   WILLIAMS & ASSOCIATES
   1290 Sutterville Rd Suite 290
   Sacramento, CA 95822

I have read the above statements and declare under the penalty of perjury of the laws of the state of California that he forging is true and correct.

Executed this __18__ day of __MAY__, __2015__, at California State Prison-Sacramento, Represa California.

Signature of Affiant